# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| United States of America, | |
| | CASE NO. 03:CR-07-387 |
| v. | |
| | (JUDGE CAPUTO) |
| Darrell Gist, | |
| Defendant. | |

## **MEMORANDUM**

Presently before the Court are Defendant Darrell Gist's motions to dismiss the indictment brought pursuant to Federal Rule of Criminal Procedure 12(b)(2) and motion for subpoena duces tecum pursuant to Federal Rule of Criminal Procedure 17(c). (Doc. 28.) Motion I is a motion to dismiss the indictment for selective prosecution. Motion II is a motion for subpoena duces tecum for Defendant's selective prosecution claim. Motion III is a motion to dismiss the indictment for vindictive prosecution.

Motion I to dismiss the indictment based on selective prosecution and Motion II for subpoena duces tecum for this selective prosecution claim will be denied because Defendant does not present sufficient credible evidence that similarly situated individuals of other races were not prosecuted. Motion III to dismiss the indictment on grounds of vindictive prosecution will be denied because Defendant has failed to show that the United States attorney had a vindictive motive and that the decision to prosecute was not based on the usual determinative factors.

**BACKGROUND**

**I. Procedural History**

Defendant was indicted by a federal grand jury on September 25, 2007 on charges of assault, possession of a weapon at a federal prison, and making a false statement. (Br. in Supp., Doc. 29, at 1.)  On October 4, 2007, Defendant was arraigned before United States Magistrate Judge Thomas M. Blewitt.  (*Id.*)  On March 17, 2008, Defendant filed pretrial motions, including the present motions to dismiss and motion for subpoena duces tecum.  (*Id.*)  These motions are fully briefed and ripe for disposition.

**II. Factual History**

The Government alleges that Defendant, "a 39-year-old African American male serving a 32-year sentence for Use of a Firearm During and in Relation to a Crime of Violence," attacked "inmate Amaya in a bathroom" and falsely claimed that he had been stabbed by that other inmate and was fighting back in self defense.  (Br. in Resp., Doc. 32, at 1.)  The Government also alleges that Defendant was in possession of a knife which he dropped before the alleged assault.  (*Id.*)

The Government's allegations stem from a video tape, which captured the assault and illegal weapon possession, showing Defendant and Amaya in a bathroom, in which the lights were turned off.  (*Id.* at 1-2.)  The video shows Defendant drop a knife immediately before striking Amaya in the head.  (*Id.* at 2.)  Amaya exited the bathroom and was followed by Defendant who continued his assault.  (*Id.*)  Defendant soon collapsed dramatically.  (*Id.*)  Assistance arrived and found "superficial puncture wounds" in Defendant.  (*Id.*)  Defendant, an inmate with high risk of escape, was taken to the

hospital, returned to the prison, and put in a Special Housing Unit.  (*Id*.)

Defendant disputes the Government's allegations, claiming that he was not the instigator of the altercation and was stabbed by another inmate.  (Br. in Supp., Doc. 29, at 3.)  He claims that, despite the Government's allegations, he did not stab himself.  (*Id*.)  Defendant told investigators that he was attacked in the bathroom and could not see what was going on because the lights were off.  (Br. in Resp., Doc. 32, at 2.)

Defendant was interviewed about the incident and racial tensions in the prison and was not provided Miranda warnings.  (*Id*. at 3.)  This fact is undisputed.  According to Defendant, SIS Lieutenant Kaszuba interviewed Defendant and asked him who his attacker was.  (Br. in Supp., Doc. 29, at 3.)  Defendant refused to answer because inmates who tell on other inmates are retaliated against.  (*Id*.)  The Lieutenant allegedly told Defendant that if he did not cooperate, he would be prosecuted.  (*Id*.)  Defendant still refused to cooperate.  (*Id*.)  Defendant was later prosecuted with the present charges.  (*Id*.)

Presently, Defendant acknowledges that he was involved in the alleged altercation on September 9, 2007.  (*Id*. at 2.)  Defendant alleges that non African American inmates in his prison who are involved in fights with other non African Americans are not prosecuted for their actions.  (*Id*.)  Defendant points to two incidents, the first in which 130 non African American inmates rioted and attacked one another.  (*Id*.)  In the second, a non African American inmate struck another inmate with a fire extinguisher.  (*Id*.)  He alleges that the only consequences of these incidents were administrative sanctions.  (*Id*.)

3

**LEGAL STANDARD**

Under Federal Rule of Criminal Procedure 12(b)(2), defenses and objections based on defects in the indictment must be raised prior to trial.  In ruling on a Rule 12(b)(2) motion to dismiss, the court's role is not to determine the sufficiency of the evidence, but to determine whether the allegations in the indictment are sufficient to charge the named offense.  *See United States v. DeLaurentis,* 230 F.3d 659, 661 (3d Cir. 2000) (citing *United States v. Sampson,* 371 U.S. 75, 78-79 (1962)).  The trial court should consider only those objections "that are capable of determination without the trial of the general issue."  *United States v. Carlos Alberto Diaz-Gomez*, No. CRIM. 88-484-1, 2000 WL 1868394, at *3 (E.D. Pa. 2000) (quoting *United States v. Donsky*, 825 F.2d 746, 751 (3d Cir. 1987)).  The allegations in the indictment are assumed to be true.  *See Diaz-Gomez*, 2000 WL 1868394, at * 3.

**DISCUSSION**

**I. Motion for Subpoena Duces Tecum Selective Prosecution**

To succeed on the present motion for subpoena duces tecum, in search of evidence of selective prosecution, Defendant must show that he is entitled to discovery on his selective prosecution claim.  In prosecuting cases, government prosecutors are given broad discretion in enforcing criminal law.  *See United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citing *Wayte v. United States*, 470 U.S. 598, 607 (1985)).  "So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his [the prosecutor's] discretion."  *Id*.

(quoting *Bordenkircher v, Hayes*, 434 U.S. 357, 364 (1978)).  The prosecutor's discretion, however, is constrained by the Constitution, for instance, by the Due Process Clause in the Fifth Amendment, which prohibits "an unjustifiable [prosecution] standard such as race, religion, or other arbitrary classification."  *Id*. (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

Defendant claims that the indictment against him should be dismissed because he is being selectively prosecuted in violation of this standard.  (Br. in Supp., Doc 29, at 7.)  Specifically, Defendant alleges selective prosecution based on race.  (*Id*.)  He alleges that African American inmates are routinely prosecuted for conduct for which whites are not prosecuted.  (*Id*.)  In order to make a showing of selective prosecution, Defendant must show that there is a discriminatory effect in the policy of prosecuting crimes at the prison as well as a discriminatory motivation.  *See Armstrong*, 517 U.S. at 465.

To simply obtain discovery on his selective prosecution claim, Defendant must provide "'some evidence tending to show the existence of the essential elements of the defense,' [namely] discriminatory effect and discriminatory intent."  *Armstrong*, 517 U.S. at 468 (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)).  The United States Supreme Court has interpreted "some evidence tending to show the existence" of discriminatory effect to require the defendant to "produce some evidence that similarly situated defendants of other races could have been prosecuted, but were not."  *Id*. at 469 (citing *United States v. Parham*, 16 F.3d 844, 846-47 (8th Cir. 1994)).  The Defendant must make a "credible showing" of the discriminatory effect.  *Id*. at 470.

In *Armstrong*, the defendant presented affidavits from two defense attorneys which alleged that racial discrimination occurred in the decision to prosecute cocaine related

5

offenses.  *See id. at 480-81*.  He also presented a study from the Public Defender's Office showing that all instances of the particular prosecution in question during a given year were of African Americans.  *See id.*  This evidence did not meet the "some evidence" requirement because it "failed to identify individuals who were not black and could have been prosecuted for the offenses for which the respondents were charged, but were not prosecuted." *United States v. Hedaithy*, 392 F.3d 580, 607 (3d Cir. 2004) (quoting *Armstrong*, 517 U.S. at 470).

Defendant has provided seven (7) exhibits in support of his selective prosecution claim.  Defendant's exhibit F is an incident report from Defendant's prison detailing a large fight and riot that occurred between non African American inmates.  (Ex. F, Doc. 28.)  Defendant's exhibit G is also an incident report, detailing an altercation in which one non African American inmate struck another with a fire extinguisher.  (Ex. G, Doc. 28.)  Defendant claims that none of these perpetrators were prosecuted, and thus, he is a victim of selective prosecution.  However, grand jury indictments have been issued to at least some of the inmates who were involved in these altercations.  *See United States v. Ayala-Romero, et al.*, Crim. No. 3:08-CR-63; *United States v. Sanders*, Crim. No. 3:08-CR-29.  These indictments were issued after Defendant Gist was indicted and before the present motions to dismiss for selective prosecution.  In light of these indictments, this evidence of similarly situated inmates of other races who were not prosecuted is not credible and does not pass the rigorous standard needed to acquire discovery for a claim of selective prosecution.

Defendant's only other evidence of selective prosecution is contained in exhibits A (Defendant's affidavit) through E (affidavits from four (4) other prisoners at the United

6

States Penitentiary at Canaan.)  Evidence of general racial discrimination at the prison contained in these affidavits is irrelevant to the present case because it is not germane to the scope of prosecution for similar behavior.  Claims of racial discrimination in administrative sanctions at the prison are also irrelevant because they too are unrelated to the decision to prosecute.

Defendant's evidence must be "credible evidence" in support of his claim that there is a discriminatory effect in the decision to prosecute at the prison. *Armstrong*, 517 U.S. at 457.  It is a matter of discretion for the Court to determine whether or not these affidavits are credible, and if so, whether they provide credible evidence to support the claim.  Assuming that they are credible, the affidavits do not provide evidence to support the claim.  While many of the affidavits allege that white inmates are not prosecuted for similar incidents for which African American inmates are prosecuted, they are not specific as to the type of criminal activity that occurs in the prison that goes unpunished or to the particular individuals involved.  (Exs. A-E. Doc. 28)  Like in *Armstrong*, this fails to reach the threshold of "some evidence" because it does not identify specific non African Americans who could have been prosecuted for similar offenses but were not.  Therefore, because Defendant is not entitled to discovery on his claim of selective prosecution, his motion for subpoena duces tecum will be denied.

**II. Motion to Dismiss for Selective Prosecution**

The threshold showing to warrant a dismissal of an indictment based on selective prosecution is far greater than that to receive discovery based on such a claim.  Therefore, because Defendant did not meet the burden to obtain discovery on his selective prosecution claim, his motion to dismiss for selective prosecution will be denied.

**III. Motion to Dismiss for Vindictive Prosecution**

Defendant claims that the Government decided to prosecute him because he exercised his Fifth Amendment right to remain silent. (Br. in Supp., Doc. 29, at 10.) "The defendant bears the initial burden of proof in a vindictive prosecution claim and is required to establish at least the appearance of vindictiveness." *United States v. Harvey*, 243 F. Supp. 2d 359, 363 (D. V.I. 2003) (citing *United States v. Schoolcraft*, 879 F.2d, 64 68 (3d Cir. 1989)). "Prosecutorial vindictiveness may occur when the government penalizes a defendant for invoking legally protected rights." *Schoolcraft*, 879 F.2d at 67 (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)). However, "[t]here is no prosecutorial vindictiveness . . . where the prosecutor's decision to prosecute is based on the usual determinative factors." *Id*. at 67-68 (citing *United States v. Oliver*, 787 F.2d 124, 126 (3d Cir. 1986)).

In order to show that the decision to prosecute is not based on the "usual determinative factors" and to simply obtain an evidentiary hearing, a defendant must make "'a substantial threshold showing of an improper motivation on the prosecutor's part.'" *United States v. Mariani*, 121 F. Supp. 2d 803, 809 (M.D. Pa. 2000) (Vanaski, J.) (quoting *United States v. Difeaux*, 163 F.3d 725, 729 (2d Cir. 1998)). "Prosecutorial vindictiveness is not established simply because a defendant exercised a legal right and was subsequently indicted for an additional offense." *See United States v. Baskerville*, Crim. No. 03-836, 2007 WL 150439, at *2 (D.N.J. Jan. 17, 2007). In support of a motion to dismiss, a defendant must show that the prosecution was "motivated by actual vindictiveness." *Id*. A defendant must also "present evidence that 'absent this motive, defendant would not have been prosecuted." *Mariani*, 121 F. Supp. 2d at 810 (quoting

8

*United States v. Cyprian*, 23 F.3d 1189, 1196 (7th Cir. 1994)).

In *Mariani*, the defendant, Mariani, was charged with mail fraud in connection with the waste disposal industry. *See id*. at 804-05. The United States attorney prosecuting the case, David Barasch, was previously employed as an assistant to Governor Casey. *See id*. During this time he played a role in attempting to regulate the waste management industry. *See id*. Mariana alleged that because of this, Barasch took a hands on approach to acquiring an indictment from the grand jury and had an improper motive for prosecution. *See id*. The court ruled there was no "substantial threshold showing of either specific animus or ill will on the part of Mr. Barasch or that, absent such factors, they [the defendants] would not have been prosecuted." *Id*. at 810.

In the present case, like in *Mariani*, Defendant has made no allegation whatsoever of "specific animus or ill will" by the prosecuting United States attorney. Defendant has not shown through evidence that absent his failure to reveal the identity of his attacker he would not have been prosecuted.

Defendant's only allegation of a vindictive motive is against SIS Lieutenant Kaszuba; however, "[t]he involvement of a separate sovereign tends to negate a vindictive prosecution claim." *Id*. at 68 (citing *United States v. Robinson*, 644 F.2d 1270, 1273 (9th Cir. 1981)); *see also United States v. Fulford*, 825 F.2d 3 (3d Cir. 1987) (Where the vindictive motive of the district attorney failed "to set out a claim of vindictiveness on part of the United States attorney because the charges appear[ed] to be directed against the . . . district attorney."). In the present case, Defendant alleges that SIS Lieutenant Kaszuba threatened to prosecute if Defendant did not identify his alleged attacker. (Br. in Supp., Doc. 29, at 10.) Defendant claims that he is being prosecuted because he did not

9

answer and exercised his Fifth Amendment right to remain silent. (*Id*.)  However, like in *Fulford*, the decision to prosecute did not fall onto SIS Lieutenant Kaszuba, but onto the United States attorney prosecuting this case. While Lieutenant Kaszuba is a federal, not a state employee, he only had the power to refer the case for prosecution; he did not have the power to initiate the prosecution.

Although Defendant claims a vindictive motive on the part of Lieutenant Kaszuba, he makes no claims of vindictiveness against the United States attorney.  Nor does he make any claims or show any evidence that the United States attorney's decision to prosecute was not based on the "usual determinative factors."  In *Schoolcraft*, the defendant's motion to dismiss for vindictive prosecution was denied because he did not show the decision to prosecute was not based on the "usual determinative factors," and the record showed that the defendant had committed an offense against the United States.  879 F.2d at 68.  Because the threats of increased prosecution did not come from a United States attorney, Defendant has failed to allege a vindictive motive against the United States attorney, and because of the magnitude of Defendant's offense, Defendant has failed to meet the burden of the "appearance of vindictiveness."  Therefore, his motion to dismiss the indictment on grounds of vindictive prosecution will be denied.

## CONCLUSION

For the reasons stated above, Defendant's motions to dismiss for selective prosecution and vindictive prosecution and motion for subpoena duces tecum will be denied.

An appropriate order follows.

| | |
|---|---|
| June 20, 2008 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| United States of America, | |
| | CASE NO. 03:CR-07-387 |
| v. | |
| | (JUDGE CAPUTO) |
| Darrell Gist, | |
| Defendant. | |

## ORDER

**NOW**, this ___20th___ day of June, 2008, **IT IS HEREBY ORDERED** that Defendant's motions to dismiss (Doc. 28.) for selective and vindictive prosecution, pursuant to Federal Rule of Criminal Procedure 12(b)(2), and motion for subpoena duces tecum (Doc. 28), pursuant to Federal Rule of Criminal Procedure 17(c), are **DENIED**.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge